**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 1:14-CV-22205-WPD

CITY OF MIAMI , a Florida Municipal
Corporation,

                    Plaintiff,

v.

JPMORGAN CHASE & CO.,
JPMORGAN CHASE BANK, N.A.,
JPMORGAN CHASE, and CHASE
MANHATTAN BANK USA, N.A.,

                    Defendants.

_____

**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT
TO RULE 12(B)(1) AND RULE 12(B)(6) AND MEMORANDUM OF LAW**

Pursuant to Rule 12(b)(1) and Rule 12(b)(6), Defendants JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., JPMorgan Chase, and Chase Manhattan Bank USA, N.A. ("Chase Defendants") move to dismiss the City of Miami's Amended Complaint with prejudice.

## I.   <u>INTRODUCTION</u>

This Court already has rejected the very legal theory upon which the City's lawsuit against the Chase Defendants is based, and it has dismissed three Fair Housing Act ("FHA") complaints that were virtually identical to the Complaint filed here against the Chase Defendants.[1]  In a futile attempt to avoid this Court's previous rulings, the City amended its Complaint on August 11, 2014. However, the Amended Complaint contains only superficial revisions.  The core defects that require dismissal with prejudice of the FHA and unjust enrichment claims remain and cannot be remedied. In addition, the Amended Complaint continues to ignore the fact that the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA") deprives this Court of jurisdiction over "any claim relating to any act or omission" of failed bank Washington Mutual ("WaMu")—conduct which the City improperly attributes to the Chase Defendants.  This jurisdictional bar, on its own, requires dismissal of the City's Amended Complaint.

In *City of Miami v. Bank of America*, this Court issued a comprehensive decision (the "Opinion") applicable to all of the City's FHA actions and dismissed the City's complaint for multiple independent reasons:

- *First*, the City failed to state an FHA claim because its alleged injury—lost tax revenue and the cost of municipal services—was purely economic and had no relation to the FHA's purpose.

- *Second*, as a matter of law, the City had not alleged and could not allege facts to show that the bank proximately caused the City's alleged injuries, because multiple independent actors and forces "break the causal chain" and render the City's alleged harm too remote from any allegedly discriminatory loans.

---

[1]     *See City of Miami v. Bank of America Corp.*, No. 13-24506-CIV, ECF No. 71 (S.D. Fla.); *City of Miami v. Wells Fargo & Co.*, No. 13-24508-CIV, ECF No. 49 (S.D. Fla.); *City of Miami v. Citigroup, Inc.*, No. 13-24510-CIV, ECF No. 64 (S.D. Fla.).

- *Third*, the City's FHA claim was barred by the FHA's two-year statute of limitations, because the City failed to identify any discriminatory acts within the two-year limitations period and because it cannot invoke the continuing violation doctrine.

- *Finally*, the City failed to state a claim for unjust enrichment under Florida law because (1) it failed to allege causation, (2) it conferred no direct benefit on the bank, and (3) to the extent that the bank owned property in Miami, it was entitled by law to any benefits provided by the City.

These defects are not mere pleading or technical defects and cannot be cured.  For each of these reasons, the City's Amended Complaint against the Chase Defendants remains defective and should be dismissed with prejudice.

In addition, the Amended Complaint is fatally flawed for yet another independent reason: because the City's claims are based on "act[s] or omission[s]" of WaMu, the Court lacks subject-matter jurisdiction under FIRREA.  In September 2008, federal regulators seized WaMu, placed it into receivership with the Federal Deposit Insurance Corporation ("FDIC"), and sold its assets and certain liabilities to JPMorgan Chase Bank, N.A. ("Chase Bank").  The City did not file a timely claim in the FDIC receivership, as required by FIRREA, and, thus, the Court lacks jurisdiction over any claims against the Chase Defendants based upon WaMu's conduct.  Even if the City could overcome this jurisdictional bar, which it cannot, the Purchase and Assumption Agreement between Chase Bank and the FDIC (the "P&A Agreement") makes clear that Chase Bank did not assume liability for the claims asserted in this case.  Indeed, for these reasons, a similar FHA complaint brought by the City of Los Angeles (and the same attorneys who represent the City here) against the Chase Defendants was recently dismissed.  *City of Los Angeles v. JPMorgan Chase & Co.*, No. 2:14-cv-04168-ODW(RZx), 2014 WL 3854332 at *4 (C.D. Cal. Aug. 5, 2014).

Lastly, the City's Amended Complaint is defective for several additional reasons.  The City has not pled and cannot plead a cognizable injury under Article III or as an element of its claims, because the City's allegations of injury are conclusory, the City's theory of diminished property

values ignores the tax appraisal process by which the City actually collects revenue, and the City may not recover the costs of any municipal services as a matter of law.  Furthermore, the City fails to state an FHA claim because it has not properly pled the existence of any "predatory" loans or any facts necessary to state a disparate impact claim or a claim for intentional discrimination.

## II.   FACTUAL BACKGROUND

Despite making a few cosmetic changes in its Amended Complaint, the City's legal theory and underlying allegations remain the same.  The City continues to allege that from 2004 to 2012, the Chase Defendants engaged in discriminatory lending to minorities in the City of Miami.  The City, however, also alleges that the Chase Defendants are not only liable for their own lending activity, but for the activity of nine defunct corporations, including WaMu.  (Am. Compl. ¶ 2 n. 1.) The City lumps these 13 entities together as "JPMorgan," and alleges that "JPMorgan" discriminated against minority borrowers in two distinct ways.  (*Id.* ¶ 6.)

First, as in the dismissed FHA complaints against the other banks, the City alleges "reverse redlining"—the targeting of minority communities for a variety of mortgage loans with "predatory" terms.  (*Id.* ¶ 6 n. 6.)  Based on statements attributed to confidential witnesses who worked for either a Chase Defendant or WaMu (the City does not identify which), the City claims that unidentified loan officers deceived unidentified borrowers into taking out loans they could not afford, and that some of these borrowers were minorities.  (*Id.* ¶¶ 14, 68–72.)  The City contends that it has identified 2,383 allegedly "predatory" loans that are "discriminatory."  (*Id.*¶ 146.)

Second, as in the dismissed FHA complaints, the City alleges that around 2008, Chase switched discriminatory tactics and began to engage in "traditional redlining"—the denial of credit to the same minority communities to which it had previously over-supplied credit.  (*Id.* ¶ 6 n.5.) The City makes no assertion that Chase's lending practices in minority communities following the 2008 recession differed from its practices in non-minority communities.

The City does not allege that it had any direct contact with any Chase Defendant, WaMu, or any of the other defunct entities lumped together as "JPMorgan."  Instead, the City merely alleges that the above-mentioned "predatory" practices indirectly harmed the City by leading to increased mortgage foreclosures, which led to a decrease in the market value of those properties, which led to a decrease in the City's tax revenue and an increase in municipal spending in those areas.  (*Id.* ¶¶ 120–145.)  Based upon this convoluted theory of causation and economic injury, the City brings the same two claims that this Court dismissed against the other banks:  (a) a violation of the FHA ("Count I"); and (b) a claim for unjust enrichment ("Count II").

## III.   LEGAL ARGUMENT

As this Court recognized in its Opinion, a plaintiff who brings an action pursuant to a federal statute "must establish both Article III standing and statutory standing."  *City of Miami v. Bank of America Corp.*, No. 13-24506-CIV, 2014 WL 3362348, at *3 (S.D. Fla.  July 9, 2014) (hereinafter *City of Miami*" or the "Opinion").  To demonstrate standing and to state a plausible claim, the City's allegations must transcend the "speculative," "conceivable," and "possib[le]," and must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 556–57, 566–67, 570 (2007).  In determining whether the City has done so, the Court must disregard "legal conclusions" and "conclusory statements," and must scrutinize the well-pleaded factual allegations to ensure that they satisfy the elements of a claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009); *Am. Dental Assocs. v. Cigna Corp*., 605 F.3d 1283, 1293 (11th Cir. 2010).

In the nearly identical actions against the other banks, the Court already has ruled that the City failed to plead facts to satisfy statutory standing under the FHA or the elements of its claims.  The City's superficial amendments here do nothing to remedy these fatal defects.  Further, the City's allegations against the Chase Defendants are defective for yet another threshold reason:  the City's claims are barred because they are based in whole or in part upon the conduct of WaMu.  For

each of these independent reasons and for the others described below, the City's Amended

Complaint against the Chase Defendants should be dismissed with prejudice.

> **A.    FIRREA Deprives This Court Of Jurisdiction Over The City's Amended Complaint And, Even If The Court Had Jurisdiction, No Chase Defendant Assumed Liability For WaMu's Lending Conduct.**

In its Amended Complaint, the City continues to define "JPMorgan" to include WaMu,

thereby rendering it impossible to discern whether any allegation is based on WaMu's conduct,

rather than a Chase Defendant's conduct.  (Am. Compl. ¶ 2 n.1.)  FIRREA explicitly precludes any

court from exercising subject matter jurisdiction over "any claim relating to any act or omission of

[a failed depository] institution," unless and until the claimant exhausts its administrative remedies

with the FDIC.  12 U.S.C. § 1821(d)(13)(D).  Under FIRREA's plain language, the jurisdictional

bar is absolute.  It applies to *any claim* based on the conduct of WaMu or any failed bank,

regardless of the identity of the plaintiff or whether the claim is filed against the failed bank, the

FDIC, or an assuming bank (such as Chase Bank).  *See* 12 U.S.C. § 1821(d)(13)(D); *Benson v.

JPMorgan Chase Bank, N.A.,* 673 F.3d 1207, 1214 (9th Cir. 2012); *Am. First Fed., Inc. v. Lake

Forest Park, Inc.*, 198 F.3d 1259, 1263 n. 3 (11th Cir. 1999).

Applying FIRREA's jurisdictional bar, Judge Wright recently dismissed a similar FHA

complaint brought by the City of Los Angeles (and the same attorneys who represent the City here)

against the Chase Defendants. *City of Los Angeles*, 2014 WL 3854332 at *4.  Judge Wright

reiterated that "courts are divested of jurisdiction over claims against a purchasing bank—like

Chase—when the claims are 'based on the conduct of a failed institution' . . . ." *Id.* (citing *Benson*,

673 F.3d at 1214–15).  Because the City of Los Angeles' claims against the Chase Defendants were

based "at least in part" on WaMu's conduct and because the City of Los Angeles had not pursued

its administrative remedies with the FDIC, the court dismissed the complaint.  *Id.*; *see also

Rundgren v. Washington Mut. Bank, FA,* No. 12-15368, 2014 WL 3720238, at *7 (9th Cir. July 29,

2014) (applying rule); *Lazarre v. JPMorgan Chase Bank, N.A.*, 780 F. Supp. 2d 1320, 1327 (S.D. Fla. 2011) ("Because Lazarre's claims against Chase relate to an act of WaMu, they are subject to the administrative exhaustion requirement of section 1821(d)").

The same result follows here. As in *City of Los Angeles*, the City's claims against the Chase Defendants expressly arise from WaMu's lending activities. (Am. Compl. ¶¶ 2 n.1 ("*Defendants are also liable for residential home loans and lending operations acquired from . . . Washington Mutual Bank, Washington Mutual Bank F.A. . . .* [and] Long Beach Mortgage Corp." (emphasis added); *id.* at ¶ 32.)[2] Those claims are therefore subject to FIRREA's mandatory administrative review process. Because the City has not satisfied this process (and still makes no allegation that it has) and because it is impossible to excise these FIRREA-barred WaMu allegations from the Amended Complaint, the City's claims should be dismissed for lack of subject matter jurisdiction.

Even if the City had exhausted the FIRREA administrative process, the City's Complaint fails for another reason: no Chase Defendant assumed liability for WaMu's mortgage-lending activities.[3] Indeed, the very allegations in the City's Complaint, which quote from the P&A Agreement, undermine its purely legal conclusion that the Chase Defendants assumed the disputed liabilities. As the City alleges, Section 2.5 of the P&A Agreement expressly excluded borrower claims from the liabilities Chase Bank was assuming. (*Id.* ¶ 30.) But Section 2.5's carve-out extends beyond claims brought by borrowers; it also provides that "[n]otwithstanding anything to the contrary in this Agreement, any liability associated with borrower claims . . . *or otherwise*

---

[2]     Long Beach Mortgage Corp. ("Long Beach") is a former subsidiary of WaMu that was merged into WaMu prior to its closure, and, as such, claims based on loans originated by Long Beach also are barred as matter of law. *See*, *e.g.*, *Bracamontes v. Chase Home Fin. LLC*, No. 10-CV-03888-LHK, 2011 WL 332527, at *5 (N.D. Cal. Jan. 31, 2011) (dismissing claims brought against Chase entities based upon WaMu loan where "WaMu was the successor-in-interest to the original lender Long Beach Mortgage Company.").

[3]     As a matter of law, the liabilities of a failed bank do not transfer to an institution that acquires the assets of that failed bank absent an express written assumption of those liabilities. *See S. Miami Holdings LLC v. F.D.I.C.*, No. 10-22032-CV, 2012 WL 4644716 at *2 (S.D. Fla. July 26, 2012) (Williams, J.), *aff'd* 533 F. App'x 898 (11th Cir. 2013). The rationale behind this rule is straightforward—"very few, if any, banks would enter into purchase and assumption agreements with a federal receiver if the successor banks had to assume the latent claims of unknown magnitude . . . ." *Vernon v. Resolution Trust Corp.*, 907 F.2d 1101, 1109 (11th Cir. 1990).

*arising in connection with [WaMu's] lending . . . activities* are specifically not assumed." P&A Agreement, attached hereto as Ex. A, at § 2.5 (emphasis added).  For this additional reason, Judge Wright recognized that "Chase did not assume liability for the City's claims relating to WaMu" and dismissed the City of Los Angeles' FHA complaint against the Chase Defendants.  *City of Los Angeles*, 2014 WL 3854332 at *5.

In addition, pursuant to Section 2.1, Chase Bank agreed only to assume "the liabilities of [WaMu] which are reflected on the Books and Records of [WaMu] as of Bank Closing."  Ex. A, at § 2.1.  Although the City alleges that its claims "were reflected on the Books and Records of WaMu as of September 25, 2008, based upon pertinent accounting principles" (Am. Compl. ¶ 29), this bare and unsupported legal conclusion must be rejected under *Iqbal* and *Twombly*.  Further, it fails as a matter of common sense—WaMu's books and records by necessity could not have reflected an unknown housing discrimination claim that would be filed in 2014, nearly six years after "Bank Closing."  *See City of Los Angeles*, 2014 WL 3854332 at *6 (holding as a matter of law that "[t]he City cannot allege that the liabilities at issue here were on WaMu's Books and Records in 2008, because the City did not file this lawsuit until more than five years after WaMu's failure.").

Put simply, the City cannot overcome FIRREA's jurisdictional bar, and even if it could, the Chase Defendants did not assume the disputed liabilities of WaMu.  Because the WaMu allegations permeate the entire Amended Complaint and are impossible to disentangle from the group-pled allegations against the other "JPMorgan" entities,[4] the Complaint as a whole must be dismissed.[5]

---

[4]     For example, the City's alleged statistical regression analysis includes an untold number of WaMu loans for which no Chase Defendant is responsible and over which the Court has no subject matter jurisdiction.  (Am. Compl. ¶¶ 15, 37, 88, 94–99, 101, 104–05, 110–12, 143.)  For this reason and others, including the City's failure to "control for relevant . . . factors" that impact lending and foreclosures (*City of Miami*, 2014 WL 3362348, at *5), the regression analysis is not plausible.  *See, e.g., Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 650-51 (1989).

[5]     The City's improper group pleading, on its own, requires dismissal of the Amended Complaint.  It is axiomatic that under *Iqbal* and *Twombly*, a complaint must allege facts to state a claim against each particular defendant.  *See, e.g., City of Fort Lauderdale v. Scott*, 773 F. Supp. 2d 1355, 1362 (S.D. Fla. 2011).  Applying this rule, courts routinely dismiss claims which, like the City's claims here, are based upon allegations that lump separate and distinct defendants

### B.     The City's FHA Claim Must Be Dismissed With Prejudice Because, As This Court Has Recognized, Its Legal Theory Is Flawed As A Matter Of Law.

#### 1.     The City Lacks Statutory Standing Under The FHA Because Its Alleged Economic Losses Are Not Related to the FHA's Purpose.

In its Opinion, the Court held that the Supreme Court's "zone of interests" test and binding

Eleventh Circuit precedent mandated dismissal with prejudice of the City's nearly identical FHA

claim against Bank of America for lack of statutory standing.   *See City of Miami*, 2014 WL

3362348, at *3–4.  That same analysis requires the dismissal with prejudice of the City's FHA

claim against the Chase Defendants.

Under recent Supreme Court precedent, "[c]ourts are to 'presume that a statutory cause of

action extends only to plaintiffs whose interests fall within the zone of interests protected by the law

invoked.'" *Id.* (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1388

(2014)).  The FHA's zone of interests is clearly delineated in the statute itself, which was enacted to

provide "fair housing" by preventing housing discrimination.  42 U.S.C. § 3601.  Because the FHA

is a civil-rights statute designed to promote desegregation and racial integration, *see, e.g.*, *Lawrence

v. Courtyards at Deerwood Ass'n, Inc.*, 318 F. Supp. 2d 1133, 1141 (S.D. Fla. 2004), it limits the

plaintiffs who may recover for housing discrimination to those who have been "aggrieved" by

violation of the statute.  42 U.S.C. § 3613(a)(1)(A).  The Supreme Court has explicitly held that a

statute limiting relief to "aggrieved persons" necessarily "exclud[es] plaintiffs who might

technically be injured in an Article III sense but whose interests are unrelated to the statutory

prohibitions." *Thompson v. N. Am. Stainless,* 131 S.Ct. 863, 870 (2011).

Indeed, based on the FHA's plain language, the Eleventh Circuit has long held that the FHA

does not provide a cause of action to "plaintiffs who show no more than an economic interest which

---

together without distinction.  *See, e.g., Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1373-74 (S.D. Fla. 2011) (applying rule); *Ty Bruggemann v. Amacare Group, Inc.*, No. 09-cv-2562, 2010 WL 935687, at *3 (M.D. Fla. March 15, 2010) (same).  The same result should follow here.

is not somehow affected by a racial interest." *City of Miami*, 2014 WL 3362348, at \*4 (quoting *Nasser v. City of Homewood*, 671 F.2d 432, 437 (11th Cir. 1982)).  In *Nasser,* developers sued under the FHA when a change in zoning regulations affected the value of their low- to moderate-income housing project.  671 F.2d at 437.  The Eleventh Circuit rejected this claim as being unrelated to the FHA's purpose, because the claimants' "interest in [the] value of the property in no way implicates values protected by the Act." *Id.*; *see also DT Apartment Grp., LP v. CWCapital, LLC*, No. 3:12-CV-0437-D, 2012 WL 6693192, at \*15–16 (N.D. Tex. Dec. 26, 2012) (no FHA claim because plaintiff was "merely using an alleged discriminatory impact on minority tenants as the basis for complaining about defendants' business practices").

In *City of Miami*, this Court found that the City's "merely economic injuries" were "very similar to the injury decided to be outside of the FHA's zone of interests in *Nasser*[.]"  2014 WL 3362348, at \*4.  Because the City asserted economic injuries with no direct connection to racial equality or housing desegregation, this Court held that the City's interests were "'so marginally related to . . . the purposes implicit in the statute that it cannot be reasonably assumed that Congress intended to permit suit.'" *Id*. (quoting *Thompson*, 131 S.Ct. at 870).

Here, the City's Amended Complaint against the Chase Defendants asserts the same "merely economic injuries" as those in the dismissed complaints against the other banks.  (Am. Compl. ¶¶ 120-145.)  The City has not been discriminated against.  It is not bringing suit on behalf of any borrower who purportedly has been discriminated against.  (*Id.* ¶ 32.)  Its claims have no relationship to racial integration in its neighborhoods.  It does not even contend that it had any lending or other interactions with any Chase Defendant.  Rather, the City is suing solely to recoup municipal tax revenues and public service expenditures that are multiple steps removed from any lending transaction (in which the City was not involved).  (*Id.* ¶ 115.)

In a desperate attempt to circumvent the binding authority of *Nasser*, the City's Amended Complaint now contends that Chase Defendants have somehow impaired the City's alleged non-economic "interest in promoting fair housing and securing the benefits of an integrated community." (Am. Compl. ¶¶ 118-119.)  But the City has not pled and cannot plead a single fact to show that the Chase Defendants' alleged conduct had any effect on racial integration or segregation. Nor does this theory make sense:  borrowers choose where they want to live before receiving a mortgage loan from the Chase Defendants and the City's primary theory is that the Chase Defendants gave *too many* loans to minorities.  Despite the City's new conclusory references to "non-economic" injuries in its Amended Complaint, this lawsuit continues to seek remedies for purely economic injuries (lost tax revenue and the increased cost of municipal services), has nothing to do with racial integration of the City's communities, and does not advance any interest in such integration.  Thus, the City's Amended Complaint should be dismissed with prejudice.

> ### 2. The City Continues To Lack Statutory Standing Because The City's Alleged Harm Is Too Attenuated To The Alleged Misconduct To <u>Demonstrate Proximate Causation.</u>

In its Opinion, the Court held that the City lacked statutory standing to assert an FHA claim because its theory of causation is too attenuated—and is interrupted by too many independent intervening factors—to show proximate causation.  *City of Miami*, 2014 WL 3362348, at *5.  The Court recognized that a statutory cause of action requires a showing that "the harm alleged has a sufficiently close connection to the conduct the statute prohibits."  *Id.* (citing *Lexmark*, 134 S.Ct. at 1390).  Because the City's alleged harm was too remote and "derivative of 'misfortunes visited upon a third person by the defendant's acts,'" the FHA complaint failed for lack of causation.  *Id.* This fundamental causation problem cannot be cured.  Here, as in *City of Miami*, the City's FHA claim fails for lack of proximate causation for several reasons.

First, as the Court recognized, the City cannot "demonstrate that the Defendants' alleged redlining and reverse redlining caused the foreclosures to occur." *Id.* The City's legal theory relies on countless intervening events and speculative causal inferences that implicate everything from the whims of local loan officers to the housing market collapse of 2008 to the discretion of county appraisers. By way of illustration only, the City's theory of causation requires the Court to assume at least the following implausible causal leaps:

- Each borrower received a "predatory" loan because of his or her race, rather than other factors, such as the borrower's credit history or income;

- Each borrower who entered foreclosure defaulted because of the allegedly predatory and discriminatory loan terms, rather than other factors, such as the borrower losing his or her job, having a health problem but no medical insurance, or making a voluntary decision to walk away from an underwater home;

- No loan modification, with more favorable loan terms, was offered to or accepted by the borrower; and

- The foreclosed property lost value because of the foreclosure, rather than other factors, such as the recession and housing market collapse, the failure to keep up the property, uninterested buyers, or changing neighborhood conditions.

These intervening, independent factors—among many others—"break the causal chain" as a matter of law between Chase's alleged "discriminatory" lending and the alleged foreclosures. *Id.*

In addition, as this Court recognized in *City of Miami*, the City's theory of causation is further attenuated because it requires an *additional* speculative step—that is, in addition to showing that the foreclosures were caused by a Chase Defendant's allegedly discriminatory loan, the City must demonstrate that any alleged foreclosures actually caused the City's harm. *Id.* The City cannot make this showing. In its Amended Complaint, the City still fails to identify a single property whose assessed value decreased, much less allege any facts to show that its assessed value decreased because of a foreclosure, rather than the general economic downturn or the property appraiser's consideration of statutory factors. Nor has the City alleged facts to show that it provided more municipal services in areas with the foreclosed properties solely because they were foreclosed, rather than other factors, such as the condition of the neighborhood itself, independent criminal acts

11

by vandals, or emergencies unrelated to foreclosure.  Indeed, the City's *only* allegations that foreclosures affected the value of the properties *at issue here* are conclusory, generalized, and based on irrelevant studies from other cities (Am. Compl. ¶¶ 129-136)—the very allegations that this Court rejected as insufficient to sustain Plaintiffs' causation burden.  2014 WL 3362348, at *5.

Finally, at a minimum, the alleged chain of causation requires speculative and "highly complex [damages] assessment[s]" on a loan-by-loan basis that preclude a finding that the City was directly injured by anything that any Chase Defendant did.  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 459 (2006) (dismissing statutory claim for lack of proximate causation because of lack of direct injury and speculation in apportioning damages); *Ironworkers Local Union No. 68 v. AstraZeneca Pharm. LP*, 585 F. Supp. 2d 1339, 1345 (M.D. Fla. 2008) (same).

Because the City's causation theory is flawed as a matter of law, it cannot plead around it. The City's speculative chain of causation is many times interrupted by independent intervening actors and forces that render too remote any causal connection between the alleged misconduct and the alleged harm.[6] *City of Miami*, 2014 WL 3362348, at *5; *see also City of Cleveland v. Ameriquest Mortgage Sec., Inc.*, 615 F.3d 496, 505 (6th Cir. 2010); *City of Birmingham v. CitiGroup, Inc.*, No. 09-BE-467-S, 2009 WL 8652915, at *4 (N.D. Ala. 19, 2009); *Tingley v. Beazer Homes Corp.*, No. 3:07-CV-176, 2008 WL 1902108, at *4 (W.D.N.C. Apr. 25, 2008). Thus, the FHA claim must be dismissed with prejudice.

### 3.   The City's FHA Claim Is Barred By The Statute Of Limitations.

The FHA mandates that claims be filed "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice."  42 U.S.C. § 3613(a)(1)(A). This Court

---

[6]      As this Court recognized, the City's vague references to a "regression analysis" are insufficient as a matter of law to overcome the numerous intervening and independent factors that break the causal chain.  2014 WL 3362348, at *5; *see also Peightal v. Metro. Dade Cnty.*, 26 F.3d 1545, 1556 (11th Cir. 1994) (statistical analyses must "not be accorded talismanic significance").  Indeed, numerous courts have granted motions to dismiss and rejected a plaintiff's purported use of regression analysis to satisfy its causation pleading burden.  *See, e.g., Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 441-442 (3d Cir. 2000) (rejecting argument that plaintiff can satisfy proximate causation requirement by "calculat[ing] damages through aggregation and statistical modeling").

has held that the statute of limitations for an FHA claim based on lending discrimination begins to run "from the date of the loan closing." *City of Miami*, 2014 WL 3362348, at *6.

As in its dismissed complaints against the other lenders, the City here does not identify a single discriminatory act occurring within the FHA's two-year limitations period. None of the City's confidential witnesses allege any predatory or discriminatory acts that occurred after 2010. (Am. Compl. ¶¶ 62-88.) In fact, these anonymous sources all stopped working for Chase (or WaMu) in 2010—at the very latest. (*Id.* ¶¶ 63-66.) Although the City now purports to identify five "sample" properties that allegedly were purchased through "predatory loans issued subsequent to June 13, 2012" (*id.* ¶ 147), this naked legal conclusion must be disregarded under *Iqbal* and *Twombly*. Simply calling an unidentified loan "predatory" does not make it so, and the City fails to identify any of the circumstances or terms of these unidentified loans—much less allege facts to show how they were *racially discriminatory*. Because the City has not identified, and cannot identify, any allegedly discriminatory events that occurred within the two-year limitations period, the FHA claim—on its face—is time-barred.

Recognizing that any alleged discrimination occurred outside the limitations period, the City again conclusorily asserts the continuing violations exception to the statute of limitations. (Am. Compl. ¶ 148.) This doctrine is inapplicable for multiple reasons.

First, to plead a continuing violation, the City must allege facts to show that a discriminatory event occurred within the limitations period. *See Roberts v. Gadsden Memorial Hosp.*, 835 F.2d 793, 800 (11th Cir. 1988); *see also Blue Cross and Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1552 (11th Cir. 1990) (plaintiff bears burden of demonstrating exception to statute of limitations). Yet here, as in *City of Miami*, the City has not even attempted to plead the existence of a single discriminatory event within the limitations period. Instead, the City makes wholly conclusory allegations that "predatory" lending "is continuing through the present" (Am. Compl. ¶¶ 5, 148), but

they do not meet the City's burden of plausibly alleging a discriminatory act within the limitations period.  *See City of Miami*, 2014 WL 3362348, at *6; *see also Whittaker v. St. Lucie Cnty. Sch. Bd.*, No. 10-14172-CIV, 2011 WL 3424564, at *5 (S.D. Fla. Aug. 5, 2011) (holding that "conclusory" assertion of a pattern or practice was insufficient to state a claim).

Second, the City's continuing violation theory also fails because the City alleges "different types of discriminatory actions or practices in which Defendants engaged, such as redlining and reverse redlining." *City of Miami*, 2014 WL 3362348, at *6.  Indeed, the City acknowledges that redlining and reverse redlining are diametrically opposite practices; and that the reverse redlining stopped between 2007 and 2009.  (Am. Compl. ¶¶ 5, 10, 85-87 (alleging that, in 2009, Chase "went from one extreme to the other").)  Moreover, by lumping thirteen separate entities, including WaMu, together as "JPMorgan," the City's FHA claim not only involves different practices, but different loans by different entities at different times.  Worse yet, whatever specific practice WaMu is alleged to have engaged in ended in September 25, 2008, the day that WaMu failed and became a government concern—and cannot be attributed to any Chase Defendant.  Therefore, the City has not pled facts to support a "continuous" violation.  *See City of Miami*, 2014 WL 3362348, at *6; *see also Roberts*, 835 F.2d at 801–02 (no continuing violation claim where plaintiff alleged two separate discriminatory acts made by different decision-makers on different terms); *Walton v. Wells Fargo Bank*, No. AW-13-428, 2013 WL 3177888 at *4 (D. Md. June 21, 2013) (applying rule).[7]

## C.   The Court Has Already Held That The City's Unjust Enrichment Claim Fails.

Like its unjust enrichment claims against the other banks, the City's unjust enrichment claim against the Chase Defendants is legally flawed.  The Amended Complaint does not and cannot cure these flaws.  Thus, this claim should be dismissed with prejudice.

---

[7]   The City's allegations of a continuing violation fail for yet another reason.  The City has alleged discrete discriminatory acts (the origination of numerous loans to numerous individuals), rather than a single ongoing practice, and the Supreme Court has held that the doctrine does not apply in this context.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002); *see also Wallace v. Chicago Housing Auth.*, 298 F. Supp. 2d 710, 716–17 (N.D. Ill. 2003).

First, this Court has held that when the City's underlying FHA claim fails for lack of proximate causation, its unjust enrichment claim based upon that same conduct also must be dismissed. *See, e.g., City of Miami*, 2014 WL 3362348, at *6; *see also Se. Laborers Health & Welfare Fund v. Bayer Corp.*, 655 F. Supp. 2d 1270, 1289 (S.D. Fla. 2009) (applying rule); *Ironworkers*, 585 F. Supp. 2d at 1345 (same).  Because the City cannot show a sufficiently direct causal link between any alleged harm and any alleged misconduct, the unjust enrichment claim should be dismissed with prejudice.

Likewise, to state a claim for unjust enrichment under Florida law, a "plaintiff must *directly* confer a benefit on the defendant in order to recover pursuant to an unjust enrichment theory." *Wiand v. Waxenberg*, 611 F. Supp. 2d 1299, 1310 (M.D. Fla. 2009) (emphasis added); *see also Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (affirming dismissal of an unjust enrichment claim because payment came from seller, rather than plaintiff purchasers).  Here, as the Court recognized in *City of Miami*, the City has failed to identify any direct benefit that it conferred on any bank.  *See* 2014 WL 3362348, at *7.

In fact, the City fails to allege facts to show that it conferred *any* benefit of any kind, direct or indirect, on any of the Chase Defendants.  At most, the City vaguely asserts that it expended "costs" by providing "municipal services" to neighborhoods "affected by foreclosures" (Am. Compl. ¶¶ 120, 137, 157, 161-163), but has not and cannot allege that any such services were somehow provided to any Chase Defendant.  Indeed, to the extent any benefits were provided, they necessarily were provided by Florida law—not the City.  (*Id.* ¶ 161 (alleging that benefits were derived from "zoning ordinances, tax laws, and other laws").)  On this basis alone, the City's unjust enrichment claim must be dismissed with prejudice.  *See, e.g., Fuller v. Mortg. Elec. Registration Sys., Inc.*, 888 F. Supp. 2d 1257, 1275 (M.D. Fla. 2012) (dismissing unjust enrichment claim in part because "any benefit . . . is derived from Florida law").

Third, the City's unjust enrichment claim is improperly duplicative.  When an unjust enrichment claim is based upon the same conduct as the underlying tort or statutory claims, the plaintiff has pled an adequate remedy of law—and therefore cannot bring an unjust enrichment claim, regardless of whether the underlying claims prove successful.  *See, e.g., Licul v. Volkswagen Grp. of Am., Inc.*, No. 13-61686-CIV, 2013 WL 6328734, at *8 n.2 (S.D. Fla. Dec. 5, 2013) (dismissing unjust enrichment claim with prejudice because even though "warranty and FDUTPA claims may also prove without merit does not impact whether their unjust enrichment claim should be dismissed as duplicative"); *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1355–56 (S.D. Fla. 2012) (same); *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1339–40 (S.D. Fla. 2011) (same). Here, the City's unjust enrichment claim seeks to recover for the same allegedly wrongful conduct that forms the basis of its FHA claim.  (Am. Compl. ¶ 163 (basing claim on "Defendants' predatory lending practices").)  Thus, its unjust enrichment claim must be dismissed with prejudice.

Lastly, the City still has failed to show that the receipt of any benefits would be "unjust" or "inequitable."  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009).  The City has failed to allege any facts to show that there was any discriminatory conduct; that the City suffered any injury; or that any Chase Defendant caused any harm to the City.  Although its Amended Complaint concludes that Chase's business practices were somehow "unlawful" (Am. Compl. ¶¶ 161–162), the City alleges no facts to support this conclusion or how it is "unjust" for any Chase Defendant who owns a foreclosed property to receive the same legal "benefits" as the public in the form of police and fire protection and zoning laws.  Thus, this claim fails as a matter of law.

**D.      The City's Claims Fail For Two Additional Reasons.**

**1.      The City Has Failed To State A Cognizable Injury.**

To plead a viable FHA or unjust enrichment claim and as an element of Article III standing, the City must allege facts to show that it suffered a cognizable injury.  42 U.S.C. § 3602(i) (FHA

permits recovery only to "aggrieved person[s]" who "have been injured by a discriminatory housing practice" or "will be injured"); *Elend v. Basham*, 471 F.3d 1199, 1204 (11th Cir. 2006) ("It is not enough that 'the . . . complaint sets forth facts from which we could imagine an injury sufficient to satisfy Article III's standing requirements'"). Here, the City continues to assert that it was injured by:  (a) a loss of tax revenue based on a decrease in the market value of foreclosed property as a result of allegedly discriminatory loans; and (b) increased payments for municipal services to those foreclosed properties.  (Am. Compl. ¶¶ 120–145.)  Both theories remain flawed.

First, despite filing an Amended Complaint, the City's allegations that it lost revenue and expended additional services remain wholly conclusory.  The City claims that it has suffered diminished tax revenue as a result of increased foreclosures (*id.* ¶¶ 121-136), but the City once again pleads no facts to show that it lost any property tax revenue.  While the Amended Complaint lists ten "sample" properties subject to purportedly discriminatory "JPMorgan" loans (*id.* ¶¶ 146-147), it does not allege that it has incurred any injury regarding these properties, and it still fails to plead any facts showing when any foreclosures took place or how any such foreclosures affected any property's assessed value.[8]  Similarly, while the Amended Complaint alleges that agencies have devoted time to "JPMorgan foreclosure properties" (*id.* ¶¶ 138-144), it once again fails to identify any such properties or any services that were provided to or for any particular property, much less the cost of those services.  Because the City again has failed to plead any specific harm it suffered, its Amended Complaint should be dismissed.  *See, e.g.*, *Mayor and City Council of Baltimore v. Wells Fargo Bank, N.A.*, 677 F. Supp. 2d 847, 850–51 (D. Md. 2010).

Second, the City's "tax revenue" theory of injury remains flawed.  It is based on the purported effect of foreclosures on the market value of property.  (Am. Compl. ¶¶ 121-124, 126-127.)  But the City does not collect tax revenue based on any property's market value.  Rather, the

---

[8]      Incredibly, the City acknowledges that the unidentified loans for five of the properties—the only loans that purportedly fall within the statute of limitations—have *not* been foreclosed upon.  (Am. Compl. ¶ 147).

City collects revenue based on a property's assessed value. Unlike market value, which fluctuates based on economic conditions and other factors, assessed value under Florida law is subject to specific statutory and constitutional restrictions. For example, the county appraiser is required by law to consider eight statutory factors in determining a property's assessed value, and foreclosure or proximity to foreclosed properties is not an express factor that the assessor may consider. *See* Fla. Stat. § 193.011 (listing factors).[9] Despite all of these factors that control assessed value in Florida, the City fails to even mention assessed value, much less describe how its theory of injury fits within this discretionary legal scheme of property valuation.

Finally, the City's assertion of damages for increased municipal expenditures violates the municipal recovery rule. It is well-settled that "the cost of public services for protection . . . is to be borne by the public as a whole," and not by the party that necessitated the provision of those services. *City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co.*, 719 F.2d 322, 323 (9th Cir. 1983) (Kennedy, J.). Because this type of damages is not recoverable, the City cannot state a cognizable claim that it was injured by the provision of police, fire, emergency, or other municipal services. *See Penelas v. Arms Tech., Inc.*, No. 99-1941CA-06, 1999 WL 1204353, at *2 (Fla. Cir. Ct. Dec. 13, 1999) (concluding that costs of providing "911, police, fire and emergency services . . . are not, without express legislative authorization, recoverable by governmental entities"); *see also D.C. v. Air Florida, Inc.*, 750 F.2d 1077, 1080 (D.C. Cir. 1984) (applying rule).

### 2. The City Fails To Allege The Necessary Elements For Its FHA Claim.

Under Eleventh Circuit law, a plaintiff asserting a claim for "redlining" or "reverse redlining" under the FHA must show: (1) an "unfair" or "predatory" lending practice, and (2) that this practice was discriminatory. *Steed v. EverHomeMortgage Co.*, 308 F. App'x 364, 368 (11th Cir. 2009). For several reasons, the Complaint fails to satisfy either of these necessary elements.

---

[9]     Indeed, these factors require the assessor to consider a property's "highest and best use" in setting taxable value. Fla. Stat. § 193.011(2); *see also Keith Investments, Inc. v. James*, 220 So.2d 695, 697–98 (Fla. 4th DCA 1969).

First, the City fails to provide any facts showing that the loans at issue were, in fact, "predatory."  The City conclusorily asserts that "JPMorgan" provided minorities with "predatory" loans in the form of "high-cost loans," "subprime loans," "interest-only loans," and similar mortgage products.  (Am. Compl. ¶ 89; *see also id.* at ¶¶ 90-97.)  Yet the City does not provide a *single* specific factual allegation about a *single* loan, such as its terms, the borrower's qualifications, the borrower's race, or what terms were available to similarly situated non-minority borrowers.

The City's failure to plead such facts renders implausible its claims based upon alleged "predatory" lending.  In fact, contrary to the City's conclusory allegations regarding "subprime" and other similar loans, it is well-established that these types of loans are not *per se* predatory, and may be essential credit-building and home-ownership tools under the proper circumstances.  *See* Final Guidance—Statement on Subprime Mortgage Lending, 72 Fed. Reg. 37569-01 (July 10, 2007) ("Subprime lending is not synonymous with predatory lending . . . .").  The City even concedes that "[r]esponsible subprime lending" can be beneficial for many borrowers who would not otherwise qualify for a mortgage loan.  (Am. Compl. ¶¶ 42–44.)  Because the City alleges no facts to plausibly show that the "predatory" loans it has supposedly identified are different from the "responsible" subprime loans that are not predatory as a matter of law, its theory of liability is flawed.

Second, the City still has failed to satisfy the second prong of the Eleventh Circuit's mortgage-discrimination analysis—that the supposedly predatory lending practice was discriminatory.  *See Steed v. EverHomeMortgage Co.*, 308 F. App'x  at 368.  Here, the City attempts to carry its burden by alleging a disparate impact theory.  Even if this theory were viable under the FHA (and it is not),[10] a plaintiff relying on evidence of statistical disparities to support a disparate impact theory is "responsible for isolating and identifying the *specific* . . . practices that

---

[10]     *See, e.g., Smith v. City of Jackson*, 544 U.S. 228, 236 n.6 (2005) (rejecting theory under nearly identical provision of § 4(a)(1) of ADEA); *see also Ricci v. DeStafano*, 557 U.S. 557, 577–78 (2009) (reaching similar conclusion for "Title VII's principal nondiscrimination provision"); *Keller v. City of Fremont,* 719 F.3d 931, 948 (8th Cir. 2013) (doubting validity of theory under FHA).

are allegedly responsible for any observed statistical disparities." *Smith*, 544 U.S. at 241 (citing *Wards Cove*, 490 U.S. at 656) (emphasis in original). Yet, contrary to the Supreme Court's disparate impact pleading requirements, the City's allegations are comprised entirely of generalized observations about mortgage lending in the United States. (Am. Compl. ¶¶ 49-61.) Although the City claims to have identified 2,383 "discriminatory loans" issued by Chase, the City provides no details on a single specific loan and does not identify a single specific practice that purportedly led to these "discriminatory loans." (*Id.* ¶¶ 146-147.) This is fatal to the City's theory.

The City also asserts an intentional discrimination theory, based solely on statements attributed to four confidential witnesses. (Am. Compl. ¶¶ 63-66.) To plead this theory, the City must allege "'sufficient factual matter' to support a reasonable inference that Chase engaged in racial discrimination" in lending. *Henderson v. JP Morgan Chase Bank, N.A.*, 436 F. App'x 935, 937–38 (11th Cir. 2011). At a minimum, the City must allege "facts showing that similarly-situated loan applicants outside [the] racial class were offered more favorable loan terms." *Id.* (citing *Edwards v. Prime, Inc.*, 602 F.3d 1276, 3000 (11th Cir. 2010)). The Amended Complaint contains no such facts. At most, the confidential witnesses generally allege that to maximize profits, undisclosed loan officers at undisclosed Chase or WaMu branches gave loans to various undisclosed borrowers who could not afford them, *regardless* of race. (Am. Compl. ¶¶ 68-84.) The Amended Complaint does not identify any minority borrowers who received a discriminatory loan, any such loans, or their terms. The City's conclusory allegations about race-neutral conduct and maximizing profits across-the-board do not state a claim for intentional discrimination.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Chase Defendants respectfully request that the Court dismiss the City's Amended Complaint with prejudice.

Dated:  August 28, 2014                    Respectfully submitted,


                                           /s/ Robert M. Brochin
                                           Robert M. Brochin
                                           Florida Bar No. 319661
                                           rbrochin@morganlewis.com
                                           Brian M. Ercole
                                           Florida Bar No. 0102189
                                           bercole@morganlewis.com
                                           Morgan Lewis & Bockius LLP
                                           200 South Biscayne Boulevard – Suite 5300
                                           Miami, Florida 33131 2339
                                           Telephone:  305.415.3000
                                           Facsimile:  305.415.3001

                                           *Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2014, a true and correct copy of Defendants' Motion To Dismiss Plaintiff's Amended Complaint Pursuant To Rule 12(b)(1) And Rule 12(b)(6) And Memorandum Of Law was filed electronically and served on all counsel of record via the Court's ECF system.

/s/ Robert M. Brochin
Robert M. Brochin